## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| **VIAHART, LLC** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | **Cause No. 6:19-cv-00406** |
| | § | |
| **ENTITIES, PARTNERSHIPS AND** | § | |
| **INDIVIDUALS IDENTIFIED IN** | § | |
| **SCHEDULE "A,"** | § | **JURY TRIAL DEMANDED** |
| | § | |
| *Defendants.* | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Viahart, LLC ("Plaintiff" or "Viahart") hereby files this Original Complaint against Entities, Partnerships and Individuals identified in Schedule A attached hereto (collectively, "Defendants") and allege as follows:

## PARTIES

1. Viahart is a Texas Limited Liability Company with its principal place of business in Wills Point, Texas.

2. Arkview, LLC d/b/a Moo Toys and d/b/a Lexivon is on information and belief, a Delaware Limited Liability Company with its principal place of business at Moorpark, California 93021 and may be served with process via its registered agent, Incorp Services, Inc. 919 North Market Street, Suite 950, Wilmington, Delaware, 19801.

3.     Best Choice Products, Inc. a/k/a BCP, f/k/a Sky Billiards, Inc. is on information and belief, a California Corporation with its principal place of business at Irvine, California and may be served with process via its registered agent Suzanne M. Graves at 1317 W. Foothill Blvd., Suite 245, Upland, California 91786.

4.     Agora, LLC d/b/a Agora Selects and/or d/b/a Agora Outlets is on information and belief, a Texas Limited Liability Company with its principal place of business in Carrollton, Texas and may be served with process via its registered agent Matthew McCombs at 2114 Greenview Drive, Carrollton, Texas 75010.

5.     Odyssey Sourcing, LLC d/b/a Build a Brain Toy Company is on information and belief, a Kansas Limited Liability Company with its principal place of business in Andover, Kansas and may be served with process via its registered agent Scott M. Hill at 100 N. Broadway, Suite 950, Wichita, Kansas 67202.

6.     Comfortscape, LLC is on information and belief, a Delaware Limited Liability Company with its principal place of business in Wilmington, Delaware and may be served with process by serving its President, Jesus Diaz Maso at 4023 Kennett Pike #54632, Wilmington, Delaware 19807.

7.     Jesus Diaz Maso, is on information and belief, an individual who may be served with process at his place of business at 4023 Kennett Pike #54632, Wilmington, Delaware 19807.

8.     Creative Kids Far East, Inc. is on information and belief, a New York Corporation and may be served with process by serving its Chief Executive Officer Samuel Lapa at 750 Chestnut Ridge, Suite 301, Chestnut Ridge, New York 10977.

9. Chickadee Business Solutions, LLC d/b/a Fox and Grapes, is on information and belief, a Maine Limited Liability Company with its primary place of business at Biddeford, Maine and may be served with process via its registered agent Joel David Bailey at 107 Granite Street, Biddeford, Maine 04005-3651.

10. Jason Rothbart and Ronald Almagno d/b/a Jarrby is on information and belief, a New Jersey General Partnership with their primary place of business in West Orange, New Jersey and may be served with process as follows: (a) Jason Rothbart at 22 Devon Drive, West Orange, New Jersey 07052; and (b) Ronald Almagno at 365 Lum Avenue, Union, New Jersey 07083.

11. Michael P. Dahlberg d/b/a Learning Toys 4 U is on information and belief, a Minnesota sole proprietor with his primary place of business at Moorhead, Minnesota and may be served at 3744 41st Avenue S., Moorehead, Minnesota 56560.

12. iPlay iLearn, Inc. is on information and belief, a California corporation with its primary place of business at City of Industry, California and may be served with process by serving its Registered Agent, Jingyu Wang at 18725 E. Gale Ave., Suite 250, City of Industry, California 91748.

13. Playlearn USA, Inc. is on information and belief, a New York Corporation with its primary place of business at Garnerville, New York and may be served via its Chief Executive Officer, Boruch Dunner at 8 Vandenberg Circle, Garnerville, New York 10923.

14.     Playshire, LLC is on information and belief, a Texas Limited Liability Company with its primary place of business at Houston, Texas and may be served via its registered agent LegalInc Corporate Services, Inc. at 10601 Clarence Drive, Suite 250, Frisco, Texas 75033.

## JURISDICTION AND VENUE

15.     This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1114 (Trademark and Counterfeiting), 15 U.S.C. § 1125(a) (Unfair Competition), 17 U.S.C. § 501, *et. seq.* (Copyright Infringement), 28 U.S.C. § 1331 (Federal Subject Matter Jurisdiction), §1338(a)-(b) (Trademark, Trade Dress and Copyright Actions), 28 U.S.C. § 1338(b) (Unfair Competition), and 15 U.S.C. § 1051, *et. seq.*  This Court has Supplemental Jurisdiction over the claims that arise under the laws of the State of Texas pursuant to 28 U.S.C. § 1367(a), and/or because the Common Law claims of Trademark Infringement, Trade Dress Dilution, Trade Dress Infringement and Unfair Competition are so related to the Federal claims that they form part of the same controversy and are derived from a common nucleus of operative facts.

16.     This Court may properly exercise personal jurisdiction over Defendants, as each of the Defendants direct business activities toward and conduct business with consumers throughout the United States, including Texas residents through their respective websites and/or their respective online marketplace accounts, including without limitation, their Amazon accounts identified in Schedule A attached hereto (collectively, "Defendants' Internet Stores"). Further,

Defendants operate or have operated interactive Internet Stores through which, Texas residents can purchase products bearing counterfeit versions of Viahart's trademarks.

17.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as Defendants are on information and belief, engaged in or have been engaged in infringing acts and are causing harm or have caused harm within this district by advertising, selling, offering to sell and/or selling infringing products to consumers in Texas. Plaintiff's headquarters is located in this District, which has resulted in widespread and favorable acceptance of the Marks in Texas.

## **INTRODUCTION**

18.     Viahart files this Action to stem the tide of online counterfeiting of Viahart's valuable trademarks, "VIAHART" and "BRAIN FLAKES," and protect its valuable trade dress and copyrights. Viahart seeks to recover damages for the substantial harm caused by Defendants' wrongful actions. Viahart also seeks to protect the unknowing purchasing public from purchasing Counterfeit Viahart products over the internet.  Defendants operate primarily through the Amazon, ebay, Walmart and Kmart online marketplaces and on information and belief, often use business names that are incorrect or misleading in an effort to cover-up their wrongful actions. Some of the Defendants have their own websites where they have offered or continue to offer for sale, have sold or continue to sell counterfeit Viahart BRAIN FLAKES branded products.  At least one Defendant offers for sale and sells identical VIAHART BRAIN FLAKES branded products on its website.

19.    Several of the Defendants have not only used Viahart's trademark, "BRAIN FLAKES" associated with substantially identical products but they also went so far as to copy Viahart's text and photographs from Viahart's Amazon product pages in an effort to further confuse consumers and trade off of Viahart's good will. Moreover, the Defendants also use confusingly similar packaging design in violation of Viahart's Trade Dress rights. Viahart has been and continues to be irreparably damaged as a result of the consumer confusion caused by Defendants' ongoing or past actions.

## FACTUAL ALLEGATIONS

### Viahart's Toy Products, Copyrights Trade Dress and Trademarks

20.    Since 2010, Viahart has been engaged in the business of toy manufacturing and retail sales. Viahart has made and continues to make substantial investments of time, effort and expense in designing, developing, testing, publishing, marketing and distributing toy products, including its most famous branded product, "BRAIN FLAKES." In fact, the Wall Street Journal

recently featured Viahart's BRAIN FLAKES product in the following article:



21.     Since Viahart began manufacturing, marketing and selling Viahart's BRAIN FLAKES branded product in 2014, they have been featured or mentioned by numerous media outlets, including Bloomberg, People magazine, Yahoo, Buzzfeed, Wall Street Journal and Chinese News sites.

22.     Viahart has sold over 250,000 units or jars of BRAIN FLAKES branded products and has over 1500 positive Amazon reviews with 4.8 stars.

23.     BRAIN FLAKES is a manipulative construction toy that Viahart designed to help young children develop spatial, mathematic and creative thinking skills that may last a lifetime and may contribute to a larger pool of engineering talent. BRAIN FLAKES branded toys also help children develop their fine motor and spatial skills, while having fun. The BRAIN FLAKES product packaging is distinctive trade dress, including the yellow cap and round tub. On the front of the package, the BRAIN FLAKES brand name is prominently featured in green and

purple lettering bearing a red rectangle set against a white background with two

clusters of three (3) different sized construction pieces depicted thereon along with

an image of a tree constructed with the BRAIN FLAKES branded colorful

construction pieces as depicted below and as attached in relevant exhibits. The back

of the package bears a ribbon shaped banner with three horizontally displayed

circled examples of use of the construction pieces.



24.     In connection with Viahart's BRAIN FLAKES toy products and

advertising or marketing thereof, Viahart owns copyrights for its original text and

photographs for which it has obtained timely registrations with the United States

Copyright Office. (See Exhibit 1 for true and correct copies of relevant copyright

registrations and registered materials).

25.     Viahart has never authorized Defendants to copy, reproduce or use

Viahart's original copyrighted text or photographs for which it obtained

registration. (See Id.)

26.     Viahart advertises, markets and distributes its BRAIN FLAKES toy products under federally registered trademarks with the United States Patent and Trademark Office ("USPTO") for both "VIAHART" and "BRAIN FLAKES." Viahart developed these brands to distinguish its products from those of its competitors. Viahart has obtained registration certificates for "VIAHART" and "BRAIN FLAKES." (See Exhibit 2 for true and correct copies of the trademark registration certificates at issue). Registration of these marks is prima facie evidence of each Mark's respective validity and conclusive evidence that Viahart has the exclusive right to use these two Marks in connection with the goods and/or services identified in each registration certificate as well as other commercial goods. The registration of the Marks further provides constructive notice to Defendants that Viahart owns exclusive rights in these Marks. Viahart has used the Marks continuously and has not abandoned either Mark.

27.     Defendants have engaged in counterfeiting, trademark infringement, trademark dilution, unfair competition, trade dress infringement, trade dress dilution and copyright infringement that has caused actual confusion in the marketplace and has damaged Viahart and continues to damage Viahart.

28.     Viahart has made every effort to stop the illegal use of its trademarks by issuing cease and desist letters and filing lawsuits against numerous Defendants in the past that were on information and belief, located in and operating out of China. The current Defendants are on information and belief, all located in and operating out of the United States.

### The Problem of Counterfeit and Knock-Off Toys

29.     There is an ever-present growing problem of counterfeit and knock-off toys that has been created and exacerbated by online merchandisers. Unfortunately, it is not just the brand owners who are damaged by this problem in the marketplace, but unwitting consumers and their innocent children often experience actual physical harm as a result of counterfeiters selling untested, lower quality or unsafe toys to these consumers. See the Toy Association's article concerning this issue in detail at:

> https://www.toyassociation.org/PressRoom2/News/2019-news/new-toy-association-report-exposes-factors-contributing-to-the-rise-in-counterfeit-toys-online.aspx .

30.     The estimated value of global trade in counterfeit toy products as of 2013 was approximately 9.72 billion dollars, which made up 11% of the world's imports. China contributes heavily to the trafficking of these counterfeit goods.  See

> https://euipo.europa.eu/tunnel-web/secure/webdav/guest/document_library/observatory/documents/reports/Mapping_the_Real_Routes_of_Trade_in_Fake_Goods_en.pdf .

### Defendants' Infringing Activities

31.     Defendant Arkview, LLC d/b/a Moo Toys ("Moo Toys") willfully and knowingly sells, markets and distributes the infringing counterfeit products using the name, "Genius Flakes" on products featuring confusingly similar packaging on its website at https://mootoys.com, and on the Amazon and ebay online marketplaces. (See Exhibit 3). Moo Toys also boldly and willfully uses Plaintiff's identical or substantially similar copyrighted text in marketing and advertising the

infringing counterfeit products. Moo Toys' use of this counterfeit name, Plaintiff's copyrighted advertising and marketing text and similar trade dress protected packaging has caused actual confusion and is likely to cause confusion as to the source or origin of the product among the relevant purchasing public. (See Exhibit 4) Moo Toys sells, markets and distributes the infringing products without obtaining a trademark, trade dress, copyright license or other permission from Plaintiff. Moo Toys has refused to cease and desist from their infringing activity, which has damaged Plaintiff and continues to damage Plaintiff by continuing its willful infringing activity.

32.    Chickadee Business Solutions, LLC d/b/a Fox and Grapes ("Fox and Grapes") willfully and knowingly sells, markets and distributes the infringing counterfeit products using the Viahart trademark and the BRAIN FLAKES trademark on the Fox and Grapes website at:

https://foxandgrapesco.com/?s=brain+flakes&post_type=product&title=1&excerpt=1&content=1&categories=1&attributes=1&tags=1&sku=0&orderby=date-DESC&ixwps=1

Fox and Grapes' counterfeit BRAIN FLAKES product's packaging is identical to Plaintiff's packaging and boldly uses Viahart's copyrighted text and photos to market and sell the infringing products. (See Exhibit 5). These infringing activities are likely to cause confusion as to the source or origin of the product among the relevant purchasing public. Fox and Grapes sells, markets and distributes the infringing products without obtaining a license or other permission

from Plaintiff. Fox and Grapes has refused to cease and desist from their willful infringing activity, which has damaged Plaintiff and continues to damage Plaintiff.

33.     Defendant Creative Kids Far East, Inc. ("Creative Kids") willfully and knowingly sells, markets and distributes the infringing counterfeit products using the BRAIN FLAKES trademark on Amazon, EBay and the Creative Kids' website at https://creativekids.com/collections/all. (See Exhibit 6). Creative Kids has caused actual confusion in the marketplace and has tarnished Plaintiff's famous BRAIN FLAKES brand. (See Exhibit 7). Creative Kids sells, markets and distributes the infringing products without obtaining a license or other permission from Plaintiff. Creative Kids has refused to cease and desist from their willful infringing activity, which has damaged Plaintiff and continues to damage Plaintiff.

34.     Defendant Best Choice Products, Inc. a/k/a BCP, f/k/a Sky Billiards, Inc. ("BCP") willfully and knowingly sold, marketed and distributed the infringing counterfeit products using the BRAIN FLAKES trademark on Amazon, Walmart and the BCP website at https://bestchoiceproducts.com/ (See Exhibit 8). These infringing activities have caused actual confusion and were likely to cause confusion as to the source or origin of the product among the relevant purchasing public. BCP sold, marketed and distributed the infringing products without obtaining a license or other permission from Plaintiff. On information and belief, BCP stopped infringing on Plaintiff's trademarks. However, BCP's willful infringing activity damaged Plaintiff and continues to damage Plaintiff.

35.     Defendant Agora, LLC d/b/a Agora Selects and/or d/b/a Agora Outlets ("Agora") willfully and knowingly sold, marketed and distributed the infringing counterfeit products using the BRAIN FLAKES trademark and copyrighted text on Agora's website at https://agoraselects.com. (See Exhibit 9). These infringing activities are likely to cause confusion as to the source or origin of the product among the relevant purchasing public. Agora sold, marketed and distributed the infringing products using the BRAIN FLAKES trademark and copyrighted text and photos without obtaining a license or other permission from Plaintiff. On information and belief, Agora stopped its infringing behavior after receiving a cease and desist letter from Plaintiff. However, Agora's infringing activity damaged Plaintiff.

36.     Defendant Odyssey Sourcing, LLC d/b/a Build a Brain Toy Company ("Build a Brain") willfully and knowingly sells, markets and distributes the infringing counterfeit products using Plaintiff's distinctive packaging trade dress and copyrighted text and photos on Amazon. (See Exhibit 10). These infringing activities are likely to cause confusion as to the source or origin of the product among the relevant purchasing public. Build a Brain sells, markets and distributes the infringing products using the confusingly similar mark, "Build a Brain Imagination Flakes" and Plaintiff's copyrighted text and photos without obtaining a license or other permission from Plaintiff. Build a Brain has refused to cease and desist from their willful infringing activity of Plaintiff's copyrights and continues to

damage Plaintiff. Build a Brain has refused to cease and desist from their willful infringing activity, which has damaged Plaintiff and continues to damage Plaintiff.

37.    Defendants Comfortscape, LLC and Jesus Diaz Maso d/b/a Comfortscape (collectively, "Comfortscape") willfully and knowingly sold, marketed and distributed the infringing counterfeit products using the BRAIN FLAKES trademark and copyrighted text and photos on Amazon. (See Exhibit 11). These infringing activities are likely to cause confusion as to the source or origin of the product among the relevant purchasing public. Comfortscape sold, marketed and distributed the infringing products using the BRAIN FLAKES trademark and copyrighted text and photos without obtaining a license or other permission from Plaintiff. Comfortscape has refused to cease and desist from their willful infringing activity of Plaintiff's copyright and continues to damage Plaintiff. On information and belief, Comfortscape changed the name of their products to "Snowflakes," and is continuing to infringe Plaintiff's trademark BRAIN FLAKES, as this name associated with a nearly identical product is likely to cause confusion among the relevant purchasing public. Comfortscape's counterfeiting and trademark infringement activities have substantially damaged Plaintiff and continue to damage Plaintiff.

38.    Defendants Jason Rothbart and Ronald Almagno d/b/a Jarrby (collectively, "Jarrby") willfully and knowingly sold, marketed and distributed the infringing counterfeit products using the BRAIN FLAKES trademark and copyrighted text and photos on Amazon. (See Exhibit 12). These infringing activities

are likely to cause confusion as to the source or origin of the product among the relevant purchasing public. Jarrby sold, marketed and distributed the infringing products using the BRAIN FLAKES trademark and copyrighted text and photos without obtaining a license or other permission from Plaintiff. On information and belief, Jarrby now uses the infringing name, "Stem Flakes" instead of "BRAIN FLAKES," and continues to infringe Plaintiff's trademark BRAIN FLAKES. Jarrby's counterfeiting and trademark infringement activities substantially damaged Plaintiff and continue to damage Plaintiff.

39.    Defendant Michael P. Dahlberg d/b/a Learning Toys 4 U ("Dahlberg") willfully and knowingly sold, marketed and distributed the infringing products using the BRAIN FLAKES trademark on Amazon. (See Exhibit 13). These infringing activities are likely to cause confusion as to the source or origin of the product among the relevant purchasing public. Dahlberg sold, marketed and distributed the infringing products using the BRAIN FLAKES trademark without obtaining a license or other permission from Plaintiff. On information and belief, Dahlberg has stopped infringing Plaintiff's trademark BRAIN FLAKES. However, Dahlberg's counterfeiting and trademark infringement activities substantially damaged Plaintiff.

40.    Defendant PlayLearn USA, Inc. ("PlayLearn") willfully and knowingly sold, marketed and distributed the infringing products using the distinctive packaging trade dress and copyrighted text on Amazon. (See Exhibit 14). Further, PlayLearn infringed upon the famous BRAIN FLAKES trademark by using BRAIN

FLAKES as a search term on Amazon. (See *Id.* and

https://www.amazon.com/Snowflake-Interlocking-Connector-

PiecesColors/dp/B077FDG3F8/ref=sr_1_18?keywords=brain+flakes&qid=156460839

2&s=gateway&sr=8-18). These infringing activities are likely to cause confusion as

to the source or origin of the product among the relevant purchasing public.

PlayLearn sold, marketed and distributed the infringing products using the BRAIN

FLAKES trademark, trade dress and copyrighted text without obtaining a license or

other permission from Plaintiff. PlayLearn continues all of these infringing

activities but has changed the name on the infringing product to "Snowflakes."

PlayLearn's counterfeiting and trademark infringement activities have

substantially damaged Plaintiff and continue to substantially damage Plaintiff.

 41. Playshire, LLC ("Playshire") willfully and knowingly sold, marketed

and distributed the infringing products using Plaintiff's famous trademark, BRAIN

FLAKES, distinctive packaging trade dress and copyrighted photos on their website

at https://www.playshire.com/. (See Exhibit 15). These infringing activities are

likely to cause confusion as to the source or origin of the product among the relevant

purchasing public. Playshire sold, marketed and distributed the infringing products

using the BRAIN FLAKES trademark, trade dress and copyrighted photos without

obtaining a license or other permission from Plaintiff. On information and belief,

Playshire now uses "Fun Flakes" but uses the key terms, "Brain+Flakes" for its

Amazon page: https://www.amazon.com/PlayShire-Fun-Flakes-Educational-

Construction/dp/B072TRSP93/ref=sr_1_31?keywords=brain+flakes&qid=156460839

[2&s=gateway&sr=8-31](#) . Accordingly, Playshire continues to infringe Plaintiff's trademark "BRAIN FLAKES" and trade off the associated good will. Playshire's counterfeiting, trademark, trade dress and copyright infringement activities substantially damaged Plaintiff and continue to substantially damage Plaintiff.

## CLAIMS FOR RELIEF

### Count I. Trademark Infringement and Counterfeiting Under 15 U.S.C. § 1114 (Against All Defendants)

42.   Plaintiff repeats the allegations above as if fully set forth herein.

43.   Plaintiff's trademarks are registered on the principal register of the USPTO, are inherently distinctive or have acquired distinctiveness as a result of continuous promotion of Plaintiff's BRAIN FLAKES product.

44.   Each of the above-named Defendants have used counterfeit imitations of Plaintiff's registered BRAIN FLAKES Trademark or a name that is confusingly similar thereto in connection with the sale, offering for sale, distribution and/or advertising and marketing of infringing goods. The BRAIN FLAKES trademark is highly distinctive, and consumers expect high quality goods from Plaintiff's BRAIN FLAKES products sold or marketed using the BRAIN FLAKES Trademark.

45.   All Defendants have sold, offered to sell, marketed, advertised and distributed counterfeit reproductions of products bearing the BRAIN FLAKES trademark or a confusingly similar name, such that it is likely to cause confusion, mistake or deceive the relevant consuming public as to the origin and quality of the infringing counterfeit goods.

46.    One Defendant, Fox and Grapes, has sold, offered to sell, marketed, advertised and distributed counterfeit reproductions of the products bearing both the *identical* BRAIN FLAKES trademark and the VIAHART trademark. Fox and Grapes continues to offer to sell, market, advertise and distribute counterfeit reproductions of the products bearing the *identical* BRAIN FLAKES trademark, VIAHART trademark and trade dress among other things.

47.    Plaintiff Viahart is the exclusive owner of the BRAIN FLAKES trademark and VIAHART trademark. The BRAIN FLAKES and VIAHART trademark registrations are valid and in full force and effect. On information and belief, Defendants have knowledge of Plaintiff's rights in the BRAIN FLAKES trademark and VIAHART trademark and are willfully infringing and intentionally using counterfeit goods bearing the BRAIN FLAKES trademark. Defendants' willful, intentional and unauthorized use of the BRAIN FLAKES trademark and in one instance, the VIAHART trademark is likely to cause and is causing confusion, mistake and deception as to the origin and quality of the infringing counterfeit goods among the relevant purchasing public.

48.    Defendants Dahlberg, BCP and Agora are the only Defendants that on information and belief, stopped infringing Plaintiff's trademark, BRAIN FLAKES after receiving cease and desist correspondence from Plaintiff. However, Defendants Dahlberg, BCP and Agora's past willful infringing and counterfeit activities substantially damaged Plaintiff.

49.     Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

50.     Except for Dahlberg, BCP and Agora, Defendants' actions must be enjoined, as Plaintiff has no adequate remedy at law. If Defendants are not enjoined, Plaintiff will continue to suffer irreparable injury to its reputation and the goodwill associated with Plaintiff's BRAIN FLAKES trademarked goods.

51.     Defendants' unlawful actions have individually and jointly (directly and proximately) caused and continues to cause, substantial damage to Plaintiff and are unjustly enriching Defendants with profits at Plaintiff's expense.

52.     Under Section 35 of the Lanham Act, 15 U.S.C. § 1117(a), Plaintiff is entitled to recover from Defendants the following: (i) Defendants' profits; (ii) the damages sustained by Plaintiff, and (iii) costs of this action. Further, this is an exceptional case and as such, Plaintiff seeks to recover its reasonable attorney's fees.

53.     Also, in accordance with Section 35 of the Lanham Act, 15 U.S.C. § 1117(b), because of Defendants' wrongful intentional and knowing counterfeiting activities, Plaintiff is entitled to recover and hereby seeks treble damages and its reasonable attorney's fees. Alternatively, Plaintiff is entitled to recover statutory damages as set forth under 15 U.S.C § 1117(c).

54.     Under 15 U.S.C. § 1116, Plaintiff is entitled to injunctive relief compelling the impounding of all infringing materials. Plaintiff has suffered and will continue to suffer irreparable injury and damages due to Defendants' above-

described wrongful activities if Defendants are not permanently enjoined. Moreover, Defendants will continue to wrongfully profit from their illegal activities.

## Count II. Unfair Competition Under 15 U.S.C. § 1125(a)
### (Against All Defendants)

55. Plaintiff repeats the allegations above as if fully set forth herein.

56.    Plaintiff's trademarks are registered on the principal register of the USPTO, are inherently distinctive or have acquired distinctiveness as a result of continuous promotion of Plaintiff's BRAIN FLAKES product.

57.    Defendants' advertisements, promotions, offers to sell, sales and/or distribution of the infringing counterfeit products, in direct competition with Plaintiff, violate § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and constitute unfair competition and false designation of origin, at least because Defendants have obtained an unfair advantage as compared to Plaintiff through Defendants' use of Plaintiff's trade dress and trademarks, as such use is likely to cause consumer confusion and has actually caused confusion as to the origin and/or sponsorship/affiliation of Defendants' infringing counterfeit products by creating a false and misleading impression that their infringing products are manufactured by, authorized by, or otherwise associated with Viahart and its branded product, BRAIN FLAKES.

58.    Defendants Dahlberg, BCP and Agora are the only Defendants that on information and belief, stopped infringing Plaintiff's trademark, BRAIN FLAKES after receiving cease and desist correspondence from Plaintiff. However, Defendants

Dahlberg, BCP and Agora's past willful infringing and counterfeit activities substantially damaged Plaintiff.

59.     In accordance with Section 34 of the Lanham Act, 15 U.S.C. § 1116, Plaintiff is entitled to injunctive relief and an order compelling the impounding of all infringing materials. Plaintiff has no adequate remedy at law for Defendants' wrongful conduct and Defendant's conduct has caused Plaintiff to suffer damage to its reputation and goodwill. Unless enjoined by the Court, Plaintiff will suffer future irreparable harm as a direct result of Defendants' unlawful conduct.

60.     Under Section 35 of the Lanham Act, 15 U.S.C. § 1117(a), Plaintiff is entitled to recover from Defendants the following: (i) Defendants' profits; (ii) the damages sustained by Plaintiff, and (iii) costs of this action. Further, this is an exceptional case and as such, Plaintiff seeks to recover its reasonable attorney's fees.

### Count III: Trademark Dilution Under 15 U.S.C. § 1125(c)
### (Against All Defendants)

61.     Plaintiff repeats the allegations above as if fully set forth herein.

62.     Plaintiff's trademarks are registered on the principal register of the USPTO, are inherently distinctive or have acquired distinctiveness as a result of continuous promotion of Plaintiff's BRAIN FLAKES product and have become recognized as famous.

63.     Since Viahart began manufacturing, marketing and selling Viahart's BRAIN FLAKES in 2014, they have been featured or mentioned by numerous

media outlets, including Bloomberg, People magazine, Yahoo, Buzzfeed, Wall Street Journal and Chinese News sites.

64.     Viahart has globally sold over 250,000 units or jars of BRAIN FLAKES products and has over 1500 positive Amazon reviews with 4.8 stars.

65.     Defendants' use of the infringing Marks began after the BRAIN FLAKES trademark had become famous and has caused dilution of the distinctive quality of the distinctive quality of the trademarks VIAHART and BRAIN FLAKES. This conduct has caused Plaintiff injury pursuant to 15 U.S.C. § 1125(c).

66.     Such dilution has occurred as a result of Defendants' advertisements, promotions, offers to sell, sales and/or distribution of the infringing counterfeit products

67.     Defendants Dahlberg, BCP and Agora are the only Defendants that on information and belief, stopped infringing Plaintiff's trademark, BRAIN FLAKES after receiving cease and desist correspondence from Plaintiff. However, Defendants Dahlberg, BCP and Agora's past willful infringing and counterfeit activities substantially damaged Plaintiff.

68.     Defendants actions have been and continue to be willful and intentional in that Defendants intend or intended to trade on Plaintiff's reputation and/or cause dilution of the famous trademarks. Accordingly, Plaintiff is entitled to recover damages and profits pursuant to 15 U.S.C. § 1117.

69.     In accordance with Section 34 of the Lanham Act, 15 U.S.C. §§ 1116 and 1125(c)(1), Plaintiff is entitled to injunctive relief and an order compelling the

impounding of all infringing materials. Plaintiff has no adequate remedy at law for Defendants' wrongful conduct and Defendant's conduct has caused Plaintiff to suffer damage to its reputation and goodwill. Unless enjoined by the Court, Plaintiff will suffer future irreparable harm as a direct result of Defendants' unlawful conduct.

70.    Plaintiff is entitled to recover all available relief provided for in 15 U.S.C. §§ 1117, 1118 and 1125, including permanent injunctive relief, Defendants' profits, treble damages, costs and reasonable attorney's fees.

### Count IV: Trade Dress Infringement Under 15 U.S.C. § 1125(a)

71.    Plaintiff repeats the allegations above as if fully set forth herein.

72.    Defendants' advertisements, promotions, offers to sell, sales and/or distribution of the infringing counterfeit products, violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) by infringing Plaintiff's trade dress. Defendants' unauthorized use of Plaintiff's distinctive trade dress and/or colorable imitations thereof is likely to cause confusion, mistake or deceive the relevant consuming public as to the affiliation, connection and/or association of Defendants and Plaintiff and as to the origin, sponsorship and/or approval of Defendants' infringing products.

73.    Plaintiff's trade dress is entitled to protection under the Lanham Act. Plaintiff's trade dress includes unique, distinctive and non-functional packaging designs. Plaintiff's trade dress has acquired distinctiveness through extensive and continuous promotion and use of Plaintiff's trade dress in the United States and internationally. As a result of this extensive and continuous use, Plaintiff's trade

dress has become a famous indicator of the origin and quality of Plaintiff's manipulative construction toy packaged in a plastic tub bearing distinctive green and purple lettering. Plaintiff's trade dress became distinctive as a result of acquiring secondary meaning in the marketplace. The BRAIN FLAKES trade dress acquired this secondary meaning or distinctiveness before Defendants began their infringing activities.

74.    Except for Dahlberg, BCP and Agora, Defendants' actions must be enjoined, as Plaintiff has no adequate remedy at law. If Defendants are not enjoined, Plaintiff will continue to suffer irreparable injury to its reputation and the goodwill associated with Plaintiff's BRAIN FLAKES trade dress with VIAHART's BRAIN FLAKES manipulative construction toy products.

75.    On information and belief, Defendants' unauthorized use of Plaintiff's trade dress and colorable imitations thereof have been intentional and willful. Defendants' bad faith is evidenced at least by the similarity of its infringing products to Plaintiff's trade dress and by Defendants' continuing disregard for Plaintiff's rights.

76.    Plaintiff is entitled to recover all available relief provided for in 15 U.S.C. §§ 1125(a), 1116 and 1117 including permanent injunctive relief, Defendants' profits, actual damages, enhanced profits and damages, costs and reasonable attorney's fees.

### Count V: Trade Dress Dilution Under 15 U.S.C. § 1125(c)

77.    Plaintiff repeats the allegations above as if fully set forth herein.

78.     Defendants' advertisements, promotions, offers to sell, sales and/or distribution of the infringing counterfeit products, in direct competition with Plaintiff violate Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

79.     Plaintiff's trade dress is entitled to protection under the Lanham Act. Plaintiff's trade dress includes unique, distinctive and non-functional packaging designs. Plaintiff's trade dress has acquired distinctiveness through extensive and continuous promotion and use of Plaintiff's trade dress in the United States and internationally. As a result of this extensive and continuous use, Plaintiff's trade dress has become a famous indicator of the origin and quality of Plaintiff's manipulative construction toy packaged in a plastic tub bearing distinctive green and purple lettering. Plaintiff's trade dress became distinctive as a result of acquiring secondary meaning in the marketplace. The BRAIN FLAKES products' trade dress acquired this secondary meaning or distinctiveness before Defendants began their infringing activities.

80.     Defendants' unauthorized use of Plaintiff's trade dress has caused confusion and is likely to cause dilution of Plaintiff's famous trade dress, because the public exclusively identifies Plaintiff's famous trade dress with VIAHART BRAIN FLAKES and the manipulative construction toy by associating VIAHART's BRAIN FLAKES products with products of inferior quality thereby impairing the distinctiveness of Plaintiff's famous trade dress.

81.     Defendants Dahlberg, BCP and Agora are the only Defendants that on information and belief, stopped infringing Plaintiff's trademark, BRAIN FLAKES

after receiving cease and desist correspondence from Plaintiff. However, Defendants Dahlberg, BCP and Agora's past willful infringing and counterfeit activities substantially damaged Plaintiff.

82.     Defendants' impermissible use of Plaintiff's trade dress has caused and unless enjoined, will continue to cause, substantial and irreparable injury to Plaintiff for which Plaintiff has no adequate remedy at law, including without limitation, substantial and irreparable injury to the goodwill and reputation for quality associated with Plaintiff's trade dress, VIAHART's BRAIN FLAKES manipulative construction toy products and the VIAHART and BRAIN FLAKES brands in general.

83.     On information and belief, Defendants' unauthorized use of Plaintiff's trade dress and colorable imitations thereof have been intentional and willful. Defendants' bad faith is evidenced at least by the similarity of its infringing products to Plaintiff's trade dress and by Defendants' continuing disregard for Plaintiff's rights.

84.     Plaintiff is entitled to recover all available relief provided for in 15 U.S.C. §§ 1125(c), 1116 and 1117 including permanent injunctive relief, Defendants' profits, actual damages, enhanced profits and damages, costs and reasonable attorney's fees.

### Count VI: Trade Dress Infringement under Common Law

85.     Plaintiff repeats the allegations above as if fully set forth herein.

86.    Defendants' advertisements, promotions, offers to sell, sales and/or distribution of the infringing counterfeit products, in direct competition with Plaintiff constitutes common law trade dress infringement, because Defendants' unauthorized use of Plaintiff's distinctive trade dress and/or colorable imitations thereof is likely to cause confusion, mistake or deceive the relevant consuming public as to the affiliation, connection and/or association of Defendants and Plaintiff and as to the origin, sponsorship and/or approval of Defendants' infringing products.

87.    Plaintiff's trade dress is entitled to protection under the common law. Plaintiff's trade dress includes, unique, distinctive and non-functional packaging design. Plaintiff has continuously promoted and used its trade dress internationally, in the United States, and in Texas. As a result of this extensive and continuous use, Plaintiff's trade dress has become a famous indicator of the origin and quality of Plaintiff's manipulative construction toy packaged in a plastic tub bearing distinctive green and purple lettering. Plaintiff's trade dress became distinctive as a result of acquiring secondary meaning in the marketplace. The BRAIN FLAKES products' trade dress acquired this secondary meaning or distinctiveness before Defendants began their infringing activities.

88.    On information and belief, Defendants' unauthorized use of Plaintiff's trade dress and colorable imitations thereof have been intentional and willful. Defendants' bad faith is evidenced at least by the similarity of its infringing products to Plaintiff's trade dress and by Defendants' continuing disregard for Plaintiff's rights.

89.     Defendants Dahlberg, BCP and Agora are the only Defendants that on information and belief, stopped infringing Plaintiff's trademark, BRAIN FLAKES after receiving cease and desist correspondence from Plaintiff. However, Defendants Dahlberg, BCP and Agora's past willful infringing and counterfeit activities substantially damaged Plaintiff.

90.     Plaintiff is entitled to recover all available relief under common law, including permanent injunctive relief, Defendants' profits, actual damages, punitive damages and damages, costs and reasonable attorney's fees.

### Count VII: Copyright Infringement Under 17 U.S.C. § 501, *et. seq.* Against the following Defendants: (1) Moo Toys, (2) Fox and Grapes, (3) Agora, (4) Build a Brain, (5) Comfortscape, (6) Jarrby, (7) PlayLearn, and (8) Playshire ("Copyright Defendants").

91.     Plaintiff repeats the allegations above as if fully set forth herein.

92.     Plaintiff is the sole owner of its marketing text, photographs and imagery and the corresponding copyrights and Certificates of Registration referenced herein.

93.     Copyright Defendants infringed Plaintiff's copyrights by reproducing, distributing and displaying publicly without approval or authorization, Plaintiff's copyrighted text, photographs or images in connection with the Copyright Defendants' marketing and/or advertising of the infringing counterfeit BRAIN FLAKES manipulative construction toy products.

94.     Copyright Defendants at least acted with willful blindness to, or in reckless disregard of, Plaintiff's registered copyrights.

95.     As a result of Copyright Defendants' wrongful conduct, Plaintiff is entitled to recover its actual damages and Copyright Defendants' profits attributable to the infringement.

96.     Plaintiff is entitled to recover all available relief under 17 U.S.C. § 504, including permanent injunctive relief, Defendants' profits, actual damages, and all other such relief as the Court that is properly within the Court's discretionary powers that it deems just.

## Count VIII: Common Law Unfair Competition

97. Plaintiff repeats the allegations above as if fully set forth herein.

98.     This lawsuit is based on Defendants' advertisements, promotions, offers to sell, sales and/or distribution of the infringing counterfeit products bearing identical or virtually identical brands, as Viahart's trademark BRAIN FLAKES and in one case, VIAHART, in direct competition with Plaintiff. Further, this lawsuit is based on Defendants' use of Plaintiff's distinctive Trade Dress as well as copyright infringement.

99.     Defendants' infringing activities are likely to cause and actually have caused or are continuing to cause confusion, mistake and deception among the relevant purchasing public as to at least the origin and quality of Defendants' products by their use of Plaintiff's trademarks, whether the use is identical or virtually identical.

100.    Plaintiff has no adequate remedy at law and is suffering damages as a result of Defendants' wrongful actions.

101.   Plaintiff is entitled to recover all available relief at law and in equity under Texas Common Law as the Court deems just.

## Count IX: Common Law Trademark Infringement

102.   Plaintiff repeats the allegations above as if fully set forth herein.

103.   This lawsuit is based on Defendants' advertisements, promotions, offers to sell, sales and/or distribution of the infringing counterfeit products bearing identical or virtually identical brands, as Viahart's trademark BRAIN FLAKES and in one case, VIAHART, in direct competition with Plaintiff.

104.   Defendants' infringing activities are likely to cause and actually have caused or are continuing to cause confusion, mistake and deception among the relevant purchasing public as to at least the origin and quality of Defendants' products by their use of Plaintiff's trademarks, whether the use is identical or virtually identical.

105.   Plaintiff has no adequate remedy at law and is suffering damages as a result of Defendants' wrongful actions.

106.   Plaintiff is entitled to recover all available relief at law and in equity under Texas Common Law as the Court deems just.

## VIII. Demand for Jury Trial

107.   Plaintiff hereby demands a jury trial on all issues so triable.

## Request for Relief

For the above-stated reasons, Plaintiff Viahart, LLC respectfully requests that the Court:

1. Enter Judgment that (i) all Defendants infringed Viahart's Trademark, "BRAIN FLAKES" in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114; (ii) that all Defendants' activities constitute or constituted willful trademark infringement and counterfeiting in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114; (iii) that all Defendants' activities constitute or constituted unfair competition in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (iv) that all Defendants infringed Plaintiff's trade dress in violation of 15 U.S.C. § 1125(a); (v) that all Defendants diluted Plaintiff's trade dress in violation of 15 U.S.C. § 1125(c); (vi) that all Defendants engaged in unfair competition in violation of Texas common law, and violated Plaintiff's common law rights in Plaintiff's trade dress and trademark BRAIN FLAKES; (vii) that the Copyright Defendants, Moo Toys, Fox and Grapes, Agora, Build a Brain, Comfortscape, Jarrby, PlayLearn and Playshire infringed Plaintiff's copyrights in violation of 17 U.S.C. § 501; and (viii) that Defendant Fox and Grapes infringed Plaintiff's trademark, "VIAHART" in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114 and in violation of Texas common law.

2. In accordance with 15 U.S..C § 1116, issue a permanent injunction against further infringement and dilution of Plaintiff's

trademark, BRAIN FLAKES, further infringement and dilution of Plaintiff's trade dress, further infringement of Plaintiff's copyrights, further acts of unfair competition by Defendants and each of their respective agents, employees, servants, attorneys, successors and assigns and all others in privity or acting in concert therewith, including without limitation, selling, offering to sell, distributing, importing, advertising Defendants' infringing products, or any other products that use a copy, reproduction or colorable imitation of Plaintiff's trade dress;

3.   An Order directing Defendants, their officers, agents, servants, attorneys and all those in active concert or participation therewith to provide an accounting of all sales, revenues, and profits related to Defendants' goods and services that infringe Plaintiff's trademarks, trade dress and copyrights;

4.   An Order directing Defendants to recall all infringing products sold and/or distributed and provide a full refund for all recalled infringing or counterfeit products;

5.   An Order directing that Amazon, Ebay, Wal-Mart and all other on-line marketplaces that advertise, market or display Defendants' infringing or counterfeit products for sale to take down or remove all such advertising, marketing or displays from their respective websites. Further, issue an Order directing all

Defendants to take down or remove all other infringing or counterfeit product marketing or advertising from Defendants' respective websites, including all text, photographs and images that violate Plaintiff's copyrights.

6. An Order directing the destruction of (i) all infringing products, including all recalled products, (ii) any other products that use a copy, reproduction, confusingly similar design, or colorable imitation of Plaintiff's trade dress and trademarks in Defendants' possession, custody or control, (iii) all advertising materials related to the infringing products in Defendants' possession, custody or control, including on the internet pursuant to at least 15 U.S.C. § 1118;

7. An Order directing Defendants to issue a public notice (with Plaintiff's prior approval thereof) providing proper attribution of Plaintiff's trademarks, trade dress and copyrights to Plaintiff and to provide a copy thereof to all of Defendants' customers, distributors and/or others from the infringing products are recalled;

8. An Order barring the importation of the infringing products and/or colorable imitations thereof in the United States and barring entry of the infringing products and/or colorable

imitations thereof into any customhouse of the United States, pursuant to 15 U.S.C. § 1125(b);

9. An Order awarding Plaintiff with actual, treble, enhanced and exemplary damages, or alternatively, award Plaintiff with statutory damages pursuant to 15 U.S.C. § 1117, 15 U.S.C. §§ 1125(a); and

10. An Order awarding Plaintiff with actual damages pursuant to 17 U.S.C. § 504(b) and all other relief that the Court, in its discretion, deems proper.

Dated: September 6, 2019

Respectfully submitted,

Wendy B. Mills
Texas Bar No. 24032861
**WB Mills, PLLC**
14275 Midway Rd., Suite 130
Addison, Texas 75001
Telephone: (214) 969-5995
Email: wbm@wbmillslaw.com

**COUNSEL FOR PLAINTIFF**
**VIAHART, LLC**